## Norfolk

FREDERICK JAMES DEAN, III

v.

MARILYN LOUISE MILLER DEAN

No. 0392-88-1

Decided May 2, 1989

COUNSEL

Calvin H. Childress (Kelberg, Childress & Flax, on brief), for appellant.

Francis P. Hajek (Jerrold G. Weinberg; Weinberg & Stein, on brief), for appellee.

OPINION

**COLEMAN, J.**—The trial court in a divorce decree ordered Frederick James Dean, III, to transfer 300 shares of CSX Corporation stock to his former wife, Marilyn Louise Miller Dean, and to account to her for CSX stock dividends. The court derived its power to order the stock transfer from its authority in Code § 20-107.3 to partition jointly owned property in order to effect equitable distribution of property in the divorce proceeding. Frederick Dean appeals, contending that: (1) he owned all 600 shares of CSX stock and that Marilyn Dean failed to establish by clear and convincing evidence that he made an *inter vivos* gift of the stock to her; and, (2) that even if she owned an interest in the stock she had waived or transferred her interest to him in the property settlement agreement. Finding no merit in either claim, we affirm the trial court's decision.

Frederick and Marilyn Dean were granted a final divorce on March 9, 1987. The parties' property settlement was incorporated by reference into the divorce decree. Under the agreement Marilyn Dean waived her right to spousal support, equitable distribution and attorney's fees in return for the payment of $300,000 from Frederick Dean. The agreement purported to settle all financial matters of the parties. However, in January 1988 Frederick Dean requested that the trial court reinstate the case in order to compel Marilyn Dean to abide by the agreement and transfer to him her interest in the CSX stock certificates. Marilyn Dean denied that she had failed to comply with the agreement

and by cross motion asserted that she owned one-half of the CSX stock. She requested an accounting by Frederick Dean of the CSX stock dividends.

In January 1976 Frederick Dean purchased 200 shares of Chessie System, Inc. stock which he registered in the joint names of Frederick and Marilyn Dean with the right of common law survivorship. Dean purchased the stock with funds he had received from a trust established by his father. When the Chessie System merged to form CSX Corporation, the Deans received 400 additional shares of stock which was issued in their joint names. Frederick Dean testified that Marilyn Dean never had possession of the stock certificates and that he held the certificates in his personal safety deposit box to which he had the only key. He testified that all the dividend checks were issued in their joint names, which he deposited to his individual checking account. Frederick Dean further testified that he registered the stock certificates in their joint names for two reasons: first to provide Mrs. Dean "immediate liquidity" in case of his death; and second for the income tax benefit they obtained by being able to deduct their joint expenses while attending the annual stockholder meeting at the Greenbriar resort. The stock dividends were reported as joint income on the Deans' joint tax returns. Marilyn Dean testified that, although she never had possession of the stock certificates, she was aware that the certificates were jointly registered and were in the safety deposit box. She testified that her husband had told her that he gave the stock to her so that they could travel to the Greenbriar, and that if he died the stock would go to her.

The trial court ruled that the parties owned the CSX stock as joint tenants with the right of survivorship. The court found that Mr. Dean had made an *inter vivos* gift to Mrs. Dean when he had the stock certificates registered jointly, and that the divorce severed the joint tenancy and converted ownership into a tenancy in common. The trial court also determined that, although Mrs. Dean agreed upon a contractual sum in settlement of her equitable distribution claim and waived her right to a monetary award, she did not waive her right to ownership in the jointly owned stock. From these findings the trial court ruled that Mrs. Dean retained her interest in the CSX stock and ordered Mr. Dean to transfer to Marilyn Dean one-half of the 600 shares of stock and to account to her for the CSX stock dividends he received after

the divorce.

On appeal Frederick Dean contends that Marilyn Dean failed to prove by clear and convincing evidence that he had made an *inter vivos* gift to her of a one-half interest in the stock. "In order for a gift *inter vivos* to be effective there must be an intention *in praesenti* on the part of the donor to make the gift and there must be such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in donee." *Rust v. Phillips*, 208 Va. 573, 578, 159 S.E.2d 628, 632 (1968); *see also Taylor v. Smith*, 199 Va. 871, 874, 102 S.E.2d 160, 163 (1958). The law does not presume a gift. *Rust*, 208 Va. at 578, 159 S.E.2d at 632. A person who claims ownership to property by gift must establish by clear and convincing evidence the elements of donative intent and actual or constructive delivery. *Id.* We find ample evidence in the record to support the trial court's finding that Marilyn Dean received an *inter vivos* gift of the CSX stock.

The record shows that Frederick Dean initially purchased the Chessie stock which he registered jointly with his wife with the right of survivorship. Registration of the stock certificates in their joint names vests legal title and ownership to the shares of stock in Frederick Dean and Marilyn Dean jointly. The registration of the security establishes *prima facie* that Frederick Dean intended to make an *inter vivos* gift of the stock to Marilyn Dean at the time he purchased it and registered it in their names. *Robinson v. Lee*, 205 Va. 363, 367, 136 S.E.2d 860, 863 (1964); *Wrenn v. Daniels*, 200 Va. 419, 426-27, 106 S.E.2d 126, 131 (1958).

Frederick Dean contends that he merely intended to make Mrs. Dean a "nominal holder" of the stock for her benefit and, placing her name on the stock certificate was for convenience and not to transfer ownership. Thus, he contends that his evidence rebuts the *prima facie* showing of any donative intent. *See Swan v. Swan*, 136 Va. 496, 519-24, 117 S.E. 855, 865-66 (1923).

We find that the evidence supports the finding of the trial court that Frederick Dean intended Mrs. Dean to be more than a "nominal holder" of the stock. In fact, the record clearly establishes his donative intent and the reasons for his making a gift of the stock to his wife. By making a gift they could share a joint tax benefit by deducting the cost of their annual trips to the shareholders'

meetings, and the gift of the stock together with the survivorship rights to Mr. Dean's interest would give the wife "immediate liquidity" at his death. Apparently, Mr. Dean would have us hold that a gift of property made in order to take advantage of a tax benefit is ineffectual. The right of the Deans to legally claim a tax benefit by deducting her expenses exists only if Marilyn Dean owned the stock. Thus, contrary to Frederick Dean's claim the record establishes the donative intent necessary on his part to have made an *inter vivos* gift of the stock to Marilyn Dean.

Purchasing the stock and registering the certificates in their joint names constituted constructive delivery of the undivided joint interest to Marilyn Dean. By registering legal title in their joint names, he gave Mrs. Dean an irrevocable interest in the stocks, and, thus, surrendered the power of dominion and control over the stock. *Payne v. Tobacco Trading Corp.*, 179 Va. 156, 169, 18 S.E.2d 281, 286 (1942); *Snidow v. First National Bank*, 178 Va. 239, 249, 16 S.E.2d 385, 389 (1941). Based on the nature of the property and the relationship between the parties, registering legal title in their joint names constitutes constructive delivery of the stock to Marilyn Dean. *See Snidow*, 178 Va. at 249-50, 16 S.E.2d at 389; *Thomas v. Lewis*, 89 Va. 1, 68, 15 S.E. 389, 399 (1892). Since Marilyn Dean proved the required donative intent by Mr. Dean to make an *inter vivos* gift and the delivery of that gift, the trial court correctly found that when the parties divorced, Marilyn Dean became the joint owner, as a tenant in common, of the CSX stock.

Frederick Dean next contends that even if this court finds that he did make an *inter vivos* gift of the CSX stock to Marilyn Dean, she waived her interest in the CSX stock when she agreed to the property settlement. He contends that her broad waiver in the agreement of her rights to equitable distribution and other marital rights under the agreement, in effect, also waived her interest in their jointly titled property. Mr. Dean contends that under the agreement the parties intended that she give up all her marital and property rights in exchange for the contractual cash settlement. The trial court held otherwise and we agree.

"[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Henderlite v. Henderlite*, 3 Va. App. 539, 541, 351 S.E.2d 913, 913-14 (1987)

(quoting *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). The separation agreement clearly shows that under paragraph 2(b), Marilyn Dean only intended to waive her rights to equitable distribution, spousal support and attorney's fees, for the consideration of $300,000; the agreement does not address a waiver or transfer of legal title in their jointly owned property. Therefore, Marilyn Dean did not agree to waive or give up her property rights to the CSX stock, and to find otherwise would require this court to alter the plain language of the agreement. A court "cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Henderlite*, 3 Va. App. at 541, 351 S.E.2d at 914 (quoting *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). Thus, the trial court correctly found that Marilyn Dean retained ownership of a one-half interest in the CSX stock and that she was entitled to have partition of the jointly registered certificates by requiring Frederick Dean to have the certificates reissued. The trial court also correctly ruled that Frederick Dean be required to account for the CSX stock dividends received after the divorce.

Accordingly, we affirm the trial court's decision.

*Affirmed.*

Koontz, C.J., and Barrow, J., concurred.