COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Alston and Senior Judge Coleman
Argued at Richmond, Virginia


GORDON DAVID BELCHER

                                                            MEMORANDUM OPINION[*] BY
v.      Record No. 2226-11-2                         JUDGE SAM W. COLEMAN III
                                                                  MAY 29, 2012
CAROLYN BISHOP BELCHER


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

Robert W. Partin (Locke Partin DeBoer & Quinn, on briefs), for
appellant.

Thomas L. Gordon (Gordon, Dodson, Gordon & Rowlett, on brief),
for appellee.


George David Belcher (husband) appeals from the trial court's denial of his motion to

terminate spousal support. Husband contends that the trial court erred by holding that the

spousal support termination events in Code § 20-109(A), specifically wife's habitual

cohabitation with another person, did not apply to the parties because the only termination event

expressly stated in the parties' agreement was wife's remarriage. Furthermore, husband argues

that the trial court erred by holding that husband gifted his portion of the joint checking account

to wife and not crediting him with payment of spousal support.

Upon reviewing the record and briefs of the parties, we affirm the trial court's decision in

part, reverse in part, and remand this case to the trial court for further proceedings consistent

with this opinion.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The parties married on August 4, 1979, and separated on January 1, 2004. On June 1, 2006, they entered into an agreement, which included a provision for spousal support. The agreement obligated husband to pay wife $10,000 per month beginning July 2007 through June 2017. Beside the ending date the husband handwrote, "spousal support stops if wife (Carolyn B. Belcher) remarries." Wife initialed this handwritten sentence inserted in the agreement.

On September 15, 2006, the trial court entered the final divorce decree, which affirmed, ratified, and incorporated, but did not merge the agreement and stipulation. The final decree stated, "The periodic spousal support is $10,000 per month, payable on the 1st day of each month and continuing thereafter through the June 2017 payment after which Husband's obligation to provide support shall cease unless said support is earlier terminated pursuant to the Agreement and Stipulation dated June 1, 2006."

In May 2011, wife filed a petition, asking the trial court to find husband in contempt for his failure to pay spousal support as ordered. Wife alleged that husband was $86,000 in arrears. That same month, husband filed a motion to terminate spousal support asserting that wife was in violation of Code § 20-109 and had forfeited her right to spousal support by cohabitating with another man in a relationship analogous to marriage for more than one year.

The trial court heard argument from counsel regarding husband's motion to terminate spousal support. The trial court found that the agreement was unambiguous, and pursuant to the agreement, the only event for which it provided termination of spousal support was upon wife's remarriage. Accordingly, the trial court ruled that the termination events set forth in Code § 20-109 were not applicable because the parties' agreement controlled. The trial court thus denied husband's motion to terminate spousal support. The trial court memorialized its ruling in an October 7, 2011 order.

In a separate hearing, the trial court heard evidence and argument regarding husband's failure to pay spousal support. Husband argued that wife received $60,000 from his share of the joint checking account and that amount should be credited against any spousal support arrearage. The trial court found that husband was in arrears $74,000. The trial court concluded that husband gave the $60,000 to wife as a gift and, thus, did not credit that amount against the $74,000 arrearage. The trial court entered an order memorializing its rulings on October 25, 2011. Husband timely appealed both orders.

## ANALYSIS

### Termination of Spousal Support

Husband argues that the trial court erred in holding that none of the termination events in Code § 20-109, except for wife's remarriage, applies to the parties' agreement and the termination of husband's spousal support obligation. We agree.

The parties' agreement, dated June 1, 2006, included the handwritten statement that "Spousal support stops if wife (Carolyn B. Belcher) remarries." The agreement did not state specifically that spousal support terminated if either party died or if wife cohabited with someone analogous to marriage. The trial court concluded:

> The Court finds that the agreement is clear, concise, that it does not include the parameters for termination that are set forth in 20-109(a), other than the parameter that the parties both agree that support stops if the wife remarries. Had it been the intent of the parties to do otherwise, they could have put in the rest of those parameters set forth in the statutory language. It was not in here. The Court cannot reconstruct the agreement to include language which was excluded when only part of it was included. Therefore I'm finding that the agreement prevails and that the provisions pertaining to whether or not the wife cohabits in a relationship akin to a marital relationship are not applicable to this case.

"'We review the trial court's statutory interpretations and legal conclusions *de novo*.'" Craig v. Craig, 59 Va. App. 527, 539, 721 S.E.2d 24, 29 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004)).

Prior to 1997, the Code listed two events, namely remarriage or death, as occurrences that terminate spousal support. In 1997, the General Assembly amended Code § 20-109 to include cohabitation as a termination event. Currently, Code § 20-109(A) provides:

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable. The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any petition for modification of support.

This Court has explained that under the current statute, "[I]n cases involving cohabitation, remarriage, or death . . . the stipulation or contract must expressly *preclude* termination of the contractual duty of spousal support on these grounds. If it fails to do so, the contractual obligation may be terminated." Newman v. Newman, 42 Va. App. 557, 570, 593 S.E.2d 533, 540 (2004) (en banc); see also Baldwin v. Baldwin, 44 Va. App. 93, 101, 603 S.E.2d 172, 175 (2004) ("[W]hether a statutory bar to spousal support must be *expressly included* in the agreement as a ground for termination or *expressly excluded* depends entirely on whether the agreement predates or postdates the legislative enactment creating the bar.").

Here, the agreement postdated the 1997 amendments to Code § 20-109 allowing for termination of spousal support based on habitual cohabitation. Since the agreement did not expressly preclude cohabitation as a possible termination event, cohabitation remained a viable ground for termination of spousal support. The trial court erred in denying husband's motion to terminate spousal support. The matter is remanded for the parties to present evidence to the trial court on husband's motion to terminate spousal support.[1]

<u>Donative Intent for Gift</u>

Next, husband argues that the trial court erred in finding that he gifted his portion of the checking account to wife and not crediting him $60,000 for the amount owed to wife for spousal support. We disagree.

The agreement stated that the parties agreed to divide equally the balance in the joint account. The parties stipulated that the joint account had a balance of $120,000 and that wife received the full amount. Husband testified that he let wife have his share of the balance of the account because it was "the right thing to do." Wife confirmed, "He never pursued it. I just assumed it was mine when he told me it was." The trial court held, "Mr. Belcher had testified that he let her have access to the full $120,000 because he felt it was the right thing to do . . . even though he was, by the agreement, entitled to $60,000 of that . . . . I'm also finding that he let her have it as a gift . . . ."

Wife had the burden to prove by clear and convincing evidence that the transfer of the $60,000 was a gift. <u>Utsch v. Utsch</u>, 266 Va. 124, 128, 581 S.E.2d 507, 508-09 (2003). "The

---

[1] Wife alternatively argues that the trial court found that ending her spousal support based upon her cohabitation would be unconscionable, pursuant to Code § 20-109(A)(ii). However, neither party raised the issue of unconscionability below. Reviewing the transcript, the trial court's comment that "it would seem that it would be inequitable at this time for the Court to rule that the agreement does not control," was a simple observation of the fairness of requiring the parties to comply with the contract as written, rather than a ruling of unconscionability.

three elements of a gift are:  (1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813 (citing 9A Michie's Jurisprudence, Gifts § 8 (1991)), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

"[D]etermination of donative intent is one of fact." Sfreddo v. Sfreddo, 59 Va. App. 471, 480, 720 S.E.2d 145, 150 (2012) (citing Utsch, 266 Va. at 128, 581 S.E.2d at 508-09).  The trial court had the opportunity to see and hear the witnesses.  Cirrito v. Cirrito, 44 Va. App. 287, 304, 605 S.E.2d 268, 276 (2004).

Considering we view the evidence in the light most favorable to wife, Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted), we find that the trial court did not err in concluding wife met her burden of proving by clear and convincing evidence that husband gifted the $60,000 to wife.  The trial court's ruling is affirmed.

CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.